No. 28,514.

THE EMANUEL HOME, *Appellant*, v. CARL M. BERGIN, as Administrator of the Estate of Martha Edling, Deceased, *Appellee*.

(274 Pac. 284.)

Opinion filed February 9, 1929.

*C. Vincent Jones,* of Clay Center, for the appellant.

*W. T. Roche,* of Clay Center, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The only matter involved in this appeal is the statute of limitations and a determination as to when the action accrued. A claim for care and attention bestowed upon the deceased for approximately one year prior to her death was filed against the estate of the deceased by the Emanuel Home, where she lived and was cared for during the last year of her life. The administrator demurred to the same because the statute of limitations had run

against the claim. The demurrer was sustained in the probate court, and when the case was appealed to the district court the demurrer was again filed and sustained, from which ruling the plaintiff appeals.

Martha Edling entered the Emanuel Home September 5, 1924. She died there August 9, 1925. An administrator was appointed August 21, 1925. This claim was filed in probate court October 26, 1927, and is for $1,221.50 on a *quantum meruit* basis for board, room, care, attention, and expenses for medical attendance.

It is not contended by the appellant that the claim was filed within the one year allowed for the filing of claims ordinarily, but that it was filed within the time required by section 6 of the same act, chapter 161 of the Laws of 1925, being an amendment of R. S. 22-729, the first part of which is as follows:

"Any creditor of the deceased whose right of action shall not accrue within the said one year after the date of the administration bond, may present his claim to the court from which the letters issued at any time before the estate is ·fully administered, and if on examination thereof it shall appear to the court that the same is justly due from the estate it may, by consent of that creditor and the executor or administrator, order the same to be discharged in like manner as if due, after discounting interest as mentioned in this article."

The estate was not closed or completely settled when the claim was presented, and in connection with the claim was an objection to the approval of the final report of the administrator, which had not then been approved. The appellant insists that its claim properly comes within the provisions of the statute just quoted, because it did not in fact accrue until March 22, 1927, and it sets out in its claim so filed the facts which it alleges delayed the accrual of the claim, which are briefly as follows: That on January 9, 1926, about five months after the appointment and qualification of the administrator, the appellant filed in the probate court its claim for $2,000 on a note given by the deceased to the Emanuel Home before she entered it, for the purpose of compensating the home for her care, board, room, and attention during the remainder of her life; that this claim was resisted by the administrator upon the ground that the deceased was incompetent and not of sound mind at the time she executed such note, and the jury so found, and the court after several hearings and many delays approved such finding and overruled the appellant's motion for a new trial in that action on the

note on March 22, 1927, about seven months before the filing of the *quantum meruit* claim in this case.

Appellant strongly maintains that the deceased was presumed to be sane and capable of transacting business for herself, and, as the home had an express contract with her for her care and keep, as evidenced by the note, it had no right to assert and urge an implied contract while the express contract existed and was in force, and that its rights under an implied contract did not and could not accrue until the jury and court found the deceased to have been of unsound mind and irresponsible at the time when she executed the note.

Appellant cites eminent authorities giving definitions of the word "accrue," among them one that was quoted with approval in the case of *Bruner v. Martin,* 76 Kan. 862, 868, 93 Pac. 165, as follows:

" 'The true test, therefore, to determine when a cause of action has accrued is to ascertain the time when plaintiff could first have maintained his action to a successful result.' "

It then shows by the decision in *Ray v. Railway Co.,* 90 Kan. 244, 247, 133 Pac. 847, that "it is a general rule that a contract will not be implied where a specific contract has been entered into and acted upon by the parties to a transaction," and cites other cases and good authorities to the same effect, and concludes that this· present action on an implied contract could not have been maintained to a successful result until the express contract had been held to have been of no effect or void, which was at the close of the litigation on the note. We do not think that is the correct application of the rule. It is true that one cannot recover on an implied contract as against an existing express contract or when it is shown an express contract is outstanding covering the same subject, but the inhibition has reference to the recovery upon the contract rather than the accruing thereof. (*Watt v. Railway Co.,* 82 Kan. 458, 108 Pac. 811; *Ray v. Railway Co.,* supra.) There is no reason why an express and an implied contract covering the same transaction or service may not accrue at the same time, and they can both be included in the same petition or claim as different counts.

"In an action for a commission a real-estate broker may join a count for the reasonable value of his services with a count based upon an express contract to pay a stated commission." (*Berry v. Craig,* 76 Kan. 345, syl., 91 Pac. 913.)

In the opinion of the case just cited it is said of such pleading:

"The two counts were entirely consistent. Neither contradicted the other. The facts stated in the first might be true and the facts stated in the second also might be true. If an express contract existed, recovery could not be had upon an implied contract; but to meet possible exigencies of the proof the plaintiff had the right to go to the jury upon both sets of allegations." (p. 346. See, also, *Merywethers v. Youmans*, 81 Kan. 309, 105 Pac. 545; *Brigham v. Carpenter*, 110 Kan. 104, 202 Pac. 976.)

In a comparatively recent case this matter was ably discussed when the claims filed in probate court were in the reverse order from the way they have been presented in this case. The first was for reasonable allowances for services rendered and the next an express contract, and in the opinion it was said:

"This court is fully committed to the doctrine that a suit on an implied contract to pay the reasonable value of services rendered does not deny existence of an express contract to pay a definite sum for the same services; that action on one theory is not incompatible with recovery on the other, notwithstanding the difference in proof and measure of recovery; that both theories may be tendered as grounds for recovery in the same action; and that, although there can be but one recovery, plaintiff may not be required to elect, but may go to the jury on both." (*Darnell v. Haines*, 119 Kan. 633, 635, 240 Pac. 582.)

If the estate ever owed the home anything on an implied contract it was as complete an obligation as it ever could be at the death of the lady for whom the services were rendered. It accrued at her death, and delays for convenience or other reasons add nothing to it in the way of maturity; neither are delays permitted to toll the statute of limitations. In the case *Milbourne v. Kelly*, 93 Kan. 753, 145 Pac. 816, it was held where a claim was filed in the probate court two days after the statute of limitations had run that the time could not be extended by the allegation and proof that the claimant had frequently talked with the administrator about the claim and efforts had been made to adjust and settle it. A further decision in that case was that the administrator was not estopped by such negotiations from pleading the statute of limitations. The claimant must take the proper affirmative action within the statutory time in order to protect his interests. (*Railway Co. v. Grain Co.*, 68 Kan. 585, 75 Pac. 1051; *Brown v. Baxter*, 77 Kan. 97, 94 Pac. 155; *Harwood v. Railway Co.*, 101 Kan. 215, 171 Pac. 354; *Hoover v. Hoover's Estate*, 104 Kan. 635, 641, 180 Pac. 275; *Clark v. Eaton*, 109 Kan. 574, 201 Pac. 71.)

"The limitation of two years prescribed in the act in which such action must be commenced is a condition imposed upon the exercise of the right of action granted, and this time is not extended by the pendency and dismissal of a former action." (*Rodman v. Railway Co.*, 65 Kan. 645, syl. ¶ 2, 70 Pac. 642.)

Appellant cites the case of *Finley v. Gilmore*, 107 Kan. 349, 191 Pac. 256, where it was held the action did not accrue until the termination of a former action. That was an action by one partner against the estate of the other partner for a large balance shown by the settlement of the partnership estate to be due from the deceased to the surviving partner, because not until the partnership accounts were adjusted and the partnership property disposed of could anyone know which way the balance would go or for how much. No such reason exists in the case here on trial. A similar exception was expressed in *Henshaw v. Smith*, 102 Kan. 599, 171 Pac. 616, where the tenant was to recover for the valuable improvements made by him on the farm on the strength of an oral agreement, payment to be made when he had to leave the farm. It was held that the statute of limitations did not begin to run until the obligation was due and that was when he left the farm, although the oral contract had been made many years before. As long as the tenant remained on the farm there was no obligation on the part of the owner to reimburse him for the improvements.

Appellant insists that the administrator is estopped to plead the statute of limitation. The case of *Milbourne v. Kelley*, above referred to, holds otherwise, and we know of no good reason why he may not make any legal defense of which the case is susceptible. It is claimed this is in a measure an equitable proceeding, and that idea is coupled with the feature of estoppel, but we think otherwise. We find no error in the ruling of the trial court in sustaining the demurrer to the claim.

The judgment is affirmed.