No. 25,941.

THE STATE SAVINGS BANK OF LEAVENWORTH, *Appellant,* v. A. F. ALLEN, *Appellee.*

SYLLABUS BY THE COURT.

BANKS AND BANKING—*Assignment of Stock—Intention—Liability of Original Holder.* At the time of an increase of stock of a bank, the cashier, Potter, caused a certificate for twenty-five shares to be issued to his brother-in-law, Allen, without Allen's knowledge or authority. When informed of what Potter had done, Allen declined to take the stock. Two months later, at Potter's request, Allen executed an undated assignment in blank, indorsed on the back of the certificate, and left the certificate with Potter. In May, 1922, the bank became insolvent, the bank commissioner took charge, and later suit was commenced to enforce Allen's statutory additional liability. From the time the certificate was issued in December, 1918, until the time suit was commenced, Allen appeared as the registered shareholder. *Held,* judgment should be rendered against Allen without regard to his intention when he executed the assignment.

Appeal from Atchison district court; WILLIAM A. JACKSON, judge. Opinion filed July 11, 1925. Reversed.

*Lee Bond, Benjamin F. Endres,* both of Leavenworth, and *T. A. Moxcey,* of Atchison, for the appellant.

*Ralph U. Pfouts* and *Charles T. Gundy,* both of Atchison, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to enforce the statutory additional liability of the record owner of bank stock. The defense was that defendant did not own the stock. Plaintiff was defeated, and appeals.

The bank became insolvent and the bank commissioner took charge of it in May, 1922. The receiver found no record fulfilling the technical requirements of a "stock register" among the bank's effects, but he found a clear record of the stock of the bank. This record disclosed certificate No. 193 for twenty-five shares issued to A. F. Allen, dated December 18, 1919. The verified annual list furnished by the bank to the bank commissioner pursuant to statute, showing the stockholders of the bank on January 1, 1922, disclosed the following:

Banks and Banking, 7 C. J. § 69.

State Savings Bank v. Allen.

| Name of stockholder. | P. O. address. | No. of shares. |
|---|---|---|
| Allen, A. F. | Huron, Kansas. | 25 |

The certificate was produced at the trial, which occurred in May, 1924, by the cashier of the First National Bank of Atchison. The national bank held the certificate as security for notes given by F. M. Potter. The certificate bore upon its back an undated assignment in blank executed by A. F. Allen.

The certificate was issued in connection with an increase of stock in the bank. F. M. Potter was cashier, and was Allen's brother-in-law. Allen testified that Potter visited him at his home in Huron and told him of the increase in stock. Potter said he had caused $2,500 of the stock to be issued in Allen's name and wanted Allen to take it, as Potter wanted to have some of the stock in the hands of his friends. Allen said he could not handle it; he did not have money to buy it. Potter then said he would arrange to have some one else take it, or would take it himself. The stock had been issued in Allen's name, but Potter did not have the certificate with him. About two months later, as Allen was passing the First National Bank in Atchison, Potter called Allen into the bank, produced the certificate, asked Allen to indorse it, and Allen wrote his name on the back of the certificate. Potter said he had taken the stock himself and Allen should indorse it to him. Potter said he was putting it up as collateral on some notes in the First National Bank. The testimony relating to what Potter said when the certificate was assigned was given on Allen's direct examination, in response to the question; "Did you have a conversation with him at the time you wrote your name on the back of the certificate?" In the course of his direct examination Allen testified he did not subscribe for the stock, or pay anything for it directly or indirectly, did not intend to do so, and never attended a stockholders' meeting.

On cross-examination Allen testified that at the time he placed his name on the back of the certificate Potter told him it was for the purpose of getting the title out of Allen and into Potter, and Potter said he wanted to put it up as security to the bank; was putting it up as collateral. When asked if there was any other conversation with Potter at the time, Allen said he did not remember any other conversation. He was there but a few minutes. Asked again if he could think of any other conversation concerning the certificate at the time he put his name on the back of it, Allen said the only thing he could recall was, Potter said Allen's signature and in-

dorsement of the certificate to Potter made it Potter's property, and that was Allen's understanding. At the conclusion of Allen's testimony both parties rested.

A demurrer to defendant's evidence was presented and argued, authorities were read and discussed, Allen being present, and at the conclusion of the argument the demurrer was overruled. Allen's counsel then asked to reopen the case for introduction of further testimony. Allen was recalled and testified that Potter said Allen should indorse the certificate over in order to get it transferred on the books; that Potter intended to take it over in his own name and would attend to it immediately; and that Potter did not tell him when he was going to use the certificate as collateral. On cross-examination Allen said he had mentioned these matters to his attorneys before the argument on the demurrer. He also said on cross-examination that he did not mean to imply by his former testimony that Potter was going to use this certificate in getting a loan from the bank, and he testified further as follows:

"Q. Didn't you say yesterday that you knew, or at least Mr. Potter told you, he was going to use this certificate with this bank at Atchison as collateral for the loan he was then getting from the bank; did you say it? A. I didn't mean it.

"Q. Did you say it, that Mr. Potter told you? A. I cannot recall my exact wording; that he was getting a loan there."

Most of the cases dealing with liability as a stockholder, of one in whose name a certificate of stock has been issued by mistake or without authority, apply the doctrine of ratification and make the subjective element of intention in assigning the unaccepted certificate controlling. (See *Williams v. Vreeland,* 250 U. S. 295, and authorities cited in the opinion.) The change in Allen's testimony reveals the touchstone. If he assigned the certificate merely for the purpose of getting the stock out of his name, or for the purpose of correcting the record to show he was not owner, he would not be liable. If he assigned the certificate to transfer title to Potter, or to enable Potter to use the certificate as if properly issued, he would be liable. The court instructed the jury in accordance with this view.

In this state, for reasons of public policy, the objective test is applied to determine liability. Banking is affected with a public interest, and all state banks are under regulatory supervision of the state bank commissioner. A double record of the issue, ownership

and transfer of stock must be kept, one in the bank and one in the bank commissioner's office. This is done for the benefit of the bank, of its creditors, of taxing officials, and in the interest of the public, represented by the bank commissioner. It is their privilege to rely on the records, and the bank commissioner may not be embarrassed in winding up the affairs of an insolvent bank by an investigation of the fact of ownership, determination of which depends ultimately on a jury's estimate of the registered holder's testimony regarding his mental attitude. If stock should be issued or transferred to a person without his knowledge or authority, nothing more appearing, he would not be subject to the liabilities of a stockholder; but whenever such a person does a voluntary act which stamps the certificate with apparent validity and vitality, he is bound by the record, whatever his intention may have been. If he desires to avoid the consequences of ownership he must see to it that the records do not present him as a registered holder.

The principles involved have been expounded in a number of cases: (*Faulkner v. Bank,* 77 Kan. 385, 94 Pac. 153; *Bank v. Strachan,* 89 Kan. 577, 132 Pac. 200; *State Bank v. Richardson,* 117 Kan. 695, 232 Pac. 1070.)

These cases dealt with stock duly issued, but the principle applies to the present controversy. When Allen executed the blank assignment on the back of the certificate and left it with Potter, he gave to it the visible characteristics of a valid certificate regularly issued to him. On the record he stood as surety for the bank's liabilities. He was bound to know the law, and his liability is the same as if the certificate had been regularly issued to him.

The judgment of the district court is reversed and the cause is remanded with direction to enter judgment for the plaintiff.