No. 34,774

R. W. JOSSERAND, *Appellee*, v. J. F. STRATFORD, *Appellant*.

(102 P. 2d 1004)

Opinion filed June 8, 1940.

*George Barrett* and *Robert G. Miller*, both of Pratt, for the appellant.
*R. F. Crick* and *M. C. Bucklin*, both of Pratt, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action on two promissory notes. The trial court rendered judgment for plaintiff on the pleadings, a stip-

ulation, and the opening statement of counsel. Defendant has appealed.

The pleadings may be summarized as follows: In the petition it was alleged that for many years prior to February, 1933, the Byers State Bank was a corporation organized and doing a general banking business under the laws of the state; that on December 9, 1932, defendant, for a valuable consideration, made, executed and delivered to that bank his promissory note in writing, due March 9, 1933, for the sum of $100, with interest; that on January 26, 1933, he made and executed to the bank another note for $25, due in ninety days, with interest; that in February, 1933, upon an examination by the banking department, the Byers State Bank was found to be insolvent; that it was taken charge of by the bank commissioner and a receiver appointed for it; that the two notes in question were part of the assets of the bank which passed into the hands of the receiver; that in August, 1937, under an order of the court, the remaining assets of the Byers State Bank were sold at public auction; that plaintiff purchased the two notes in question at that sale, which sale was approved by the court, and that plaintiff was the owner and holder of the notes, which were past due and unpaid. In his answer defendant admitted the execution of the notes, but denied they were executed to the Byers State Bank, and also denied there was any consideration for them. It was alleged that in March, 1932, one Hiram Furry, an uncle of defendant, died, leaving a will by which he bequeathed to defendant $1,500 in cash and United States government bonds in the sum of $9,500; that the will was duly admitted to probate, and that E. Vance Green was duly appointed and qualified as executor; that Green was the cashier of the Byers State Bank and in actual charge and management of the bank; that on the date of the first note sued upon defendant requested Green, as executor of the estate, to make a partial distribution from the estate in the sum of $100; that Green paid defendant that sum and asked him to sign the note sued upon, and stated that the note was for the sole purpose of evidencing the advancement until he, as executor, could make an accounting to the probate court, and at the request of Green, and for the purpose stated, the note was executed by defendant; that if the "note was placed in the assets of the Byers State Bank it was wrongfully and fraudulently done by the said E. Vance Green as cashier of said Byers State Bank, who had full knowledge that

the said note was not made, executed and delivered to the said Byers State Bank, and that it was given for no consideration and was given for the sole purpose as above stated"; that the second note was given under similar circumstances. It was further alleged that as cashier of the bank Green had full knowledge of all the facts; that defendant believed and relied upon the statements of Green and executed the notes to him as executor of the estate of Hiram Furry. It was further alleged that plaintiff was not a holder of the notes in due course.

When the case came on for trial it was stipulated "that the notes constituting the subject matter of this action were a part of the assets of the Byers State Bank at the time of going in the hands of the receiver and that plaintiff herein became the owner and holder of the notes by reason of purchase from the receiver of the Byers State Bank on the 6th day of August, 1937, and is not the holder of said notes in due course."

In the opening statement on behalf of defendant it was said, in substance, that the notes were the property of plaintiff by reason of his purchase of them from the receiver of the Byers State Bank; that the evidence would show that E. Vance Green was cashier of the bank at all times material, and was in active management and control of the bank; that in March, 1932, Green had been duly appointed and qualified as executor of the will of Hiram Furry; that defendant was a beneficiary under the will of cash, bonds and other property of the value of about $19,000; that in December, 1932, defendant went to the Byers State Bank and asked Green, executor of his uncle's estate, for a $100 advancement upon his bequest under the will; that Green told him, "Yes, it would be all right," and gave him a deposit slip on the bank for $100 and said, "You will have to sign this note so that I will have evidence of that, of this advancement until I can make an accounting to the probate court." The second note was executed under similar circumstances.

Perhaps it is of no consequence here, but we observe the record before us does not disclose that the amount represented by these notes was charged against the defendant in the accounting made by Green, as executor of the estate of Hiram Furry.

Appellant points to the fact that plaintiff, having purchased the notes after maturity, is not a holder of them in due course, and argues he was entitled to make any defense which he could have made if he had been sued on the notes by the Byers State Bank. If

that theory were given its greatest force it would not avail defendant here, for he gave his notes to the bank, and got credit from the bank in his checking account, for the amount of the notes. The plea that the notes were without consideration obviously lacks merit. Defendant did not give any note, or receipt or other instrument, to Green as executor, and he received no money from Green as executor. This record shows nothing which would have prevented the Byers State Bank from suing on the notes after their maturity had it then been a going concern. Perhaps Green knew, whether defendant did or not, that he, as executor, had no authority to make a partial distribution of the estate. That order would have to be made by the probate court after a report by the executor or bond given by the distributee. (G. S. 1935, 22-921.) Hence, Green told defendant, "You will have to sign this. note . . . until I can make an accounting to the probate court." There is no pleading nor contention on defendant's behalf that the note was not to be paid. And, as previously noted, there is no showing in this record that the notes were charged to defendant as advancements in any accounting finally made by Green as executor. However, if that were done it would not relieve defendant from his liability to the bank, to which he gave his notes and from which he secured payment.

There is another reason the defense attempted here is unavailing. Banks are institutions affected with a public interest. (*State Savings Bank v. Allen,* 119 Kan. 128, 130, 237 Pac. 646.) Notes given to a bank, for money received from it, are assets of the bank for the benefit of its creditors and stockholders who are entitled to look to these assets for their protection. Normally as against the bank, and more particularly as against a receiver of an insolvent bank (*Hayes v. Addy,* 139 Kan. 481, 484, 32 P. 2d 243), one is not permitted to deny his solemn obligation to the bank because of some fancied or real breach of a side agreement he had with one of its officers, particularly when such officer was acting in some other capacity. The courts give little credence to a plea that written obligations, prima facie regular, are colorable only. (*Bank v. Bank,* 116 Kan. 303, 310, 226 Pac. 998.)

Appellant cites G. S. 1935, 52-216, "Every contract on a negotiable instrument is incomplete and revocable. until delivery of the instrument for the purpose of giving effect thereto. . . ." We think this statute not applicable. This is not an action to revoke the instrument, and in fact it was delivered to the bank for the purpose

of giving effect thereto; namely, that defendant might have immediate credit at the bank for the amount of the note, a thing which he received, and that this should not be delayed until Green, as executor, made his report to the probate court and procured an order for a partial distribution of the estate. Appellant also cites several cases dealing with unusual situations in which parol evidence was held proper to be received to show the extent of a maker's liability on a written instrument. We have examined each of these cases and find them not controlling here. It would serve no useful purpose to set out and distinguish these cases.

We find no error in the record. The judgment of the court below is affirmed.